The opinion of the court was delivered by
Watkins, J.
This is an appeal from a judgment dissolving an injunction sued out by the mayor of the. city of New Orleans, for the purpose of prohibiting the superintendent of police from executing and carrying into effect a certain order of the Police Board of said city, without first procuring the sanction and approval of the mayor.
The case, as stated by the city attorney in his brief, is as follows, viz.:
“ On the 25th of January, 1893, the Board of Police Commissioners passed a resolution ordering and commanding the superintendent of police, D. S. Gaster, to remove or change the police officers assigned to the various recorders’ courts, under A.ct No. 90 of 1884, every thirty days. The resolution was duly adopted, but did not receive the sanction of the mayor; on the contrary, the said mayor, believing that to put the said resolution into effect would be detrimental to and destroy the efficiency of the officers detailed to serve at the recorders’ courts, protested against the same being put in force. The desire of the mayor was complied with, and the execution of the resolution deferred until the month of March, when an effort was made by the Board of Police Commissioners to put in operation the said resolution. The mayor thereupon applied to the Civil Dis *1479 trict Court for an injunction to restrain the said Gaster and the members of the Police Board from attempting to execute the order on the grounds that the said order had not, under the provisions contained in Act 63 of 18S8, See. 6, received his sanction, and that the said order would be detrimental to the efficiency of said police force.”
The resolution adopted by the Police Board is as follows, viz.:
“That the superintendent of police shall change the patrolmen detailed as court officers in the various recorders’ courts every thirty days.”
The defence is a general denial, accompanied by the special averment that such a resolution had been by the Police Board duly enacted, and that it was their intention to enforce the provisions thereof without the sanction or consent of the mayor, unless restrained by competent judicial authority.
The question arising under this state of facts is one of law, and it is whether the concurrence of the mayor was essential to the enforcement of said resolution.
The decision of the question depends upon a proper interpretation of Sec. six (6) of Act 63 of 1888, it being the one the plaintiff particularly invokes as authority for his injunction.
On the trial in the court below there was judgment in favor of the defendant, dissolving plaintiff’s injunction and rejecting his demands, and he has appealed.
The aforesaid section reads as follows, viz.:
“The said board shall appoint a superintendent, a police surgeon, and as many captains, sergeants, corporals, clerks, operators, patrolmen and doormen, that may be requisite, and the said hoard shall, with the sanation of the mayor, promulgate all rules, regulations and orders to the police force, through the superintendent of the police force, who shall be the executive head of the whole force, and shall have the direction of said police force, subject to rules, regulations and orders of said board; provided, however, that nothing herein shall be construed as to impair, diminish or reduce the power of the mayor as commander in chief of said police force to issue such orders as might be necessary and proper for the preservation of the peace in the city of New Orleans, and promote the efficiency of said force.”
The gravamen of the controversy rests upon the italicized words of *1480 the statute quoted, viz.: “ And the said board shall, with the sanction of the mayor, promulgate all rules, regulations and orders to the police force.”
An examination of other provisions of the statute in pari materia may well be made before giving an interpretation to those of Sec. 6 —same affording an excellent guide in determining the real object the Legislature had in view in its enactment; and pursuing this theory, we find in the police law the further provisions in Sec. 16 that are, apparently, quite pertinent; and as they have been referred to by counsel of both parties, we will quote it in full.
It is as follows, viz.:
Sec. 16. “ The said Police Board, in furtherance of the police government, and for promoting and perfecting the police discipline of officers and subordinates of the police force, are empowered in their discretion to enact, modify and repeal from time to time orders, rules and regulations of general discipline, wherein, in addition to such general provisions as may be deemed expedient by said board, there may be particularly defined, enumerated and distributed, the powers and duties and liabilities of the officers, clerks and members of the police force, and wherein shall be declared the mode of appointment to office, the manner of discipline and procedure of trial, and removal from office of said officers; provided, that such laws, ordinances, orders, rules and regulations, forms and mode of procedure, shall not conflict with any of the provisions of this act.”
Galling attention to the italicized portions of the latter section, and making a comparison of same with those of Sec. 6, there can be no discrepancy discernible between them; because those of Sec. 6 declare that the police “ board shall, with the sanction of mayor, promulgate all rules, regulations and orders to the police force;” and those of Sec. 16 declare that the “ police board, in furtherance of the police government, and for promoting and perfecting the police discipline of officers and subordinates of the police force, are empowered in their discretion to enact, modify and repeal, from time to time, orders, rules and regulations of general discipline.”
Let us then see into which category the resolution in controversy falls.
The resolution simply provides that the superintendent of police shall change the patrolmen detailed as court officers in the various recorders’ courts every thirty days.
*1481 It seems quite clear that this is not a rule, order or regulation promulgated to the police force, such as that contemplated in See. 6 of the act, and which seems to contemplate a concurrence on the part of the mayor; but, on the contrary, the aforesaid resolution seems to have had for its direct and specific object the “ furtherance of the police government ” and the promotion of “ the police discipline of officers * * * of the police force” exclusively,-as directed by Sec. 16 of the statute; and such a resolution as the police board were “ empowered in their discretion to enact, modify or repeal from time to time ” as a matter of general discipline.
It seems to have been the manifest purpose of the Legislature to confer on the Board of Police Commissioners authority to adopt and promulgate all general rules, regulations and orders governing the police force generally, only with the concurrence of the mayor; but. that for the purpose of perfecting the police discipline of officers or subordinates, and for like purposes, the board could excercise their discretion unrestricted by the sanction or approval of the mayor.
When the meaning and import of a law can be ascertained from an examination and analysis of its various parts there is no occasion to examine other sources of information; though contemporaneous judicial decisions interpreting it may be examined for the purpose of determining the object and purpose, as well as the reason and spirit of the law.
And pursuing this theory we find this court had occasion, in State ex rel. Nieholls, Governor, v,s. Mayor of New Orleans, 41 An. 156, to define what it conceived to be the purpose and object of this police statute, and in the course of their opinion said:
“ A careful analysis of the act discloses that its true and clear import is to provide for a complete reorganization of the entire (police) force of the city of New Orleans by withdrawing from the mayor and City Council the power of appointing and controlling the force, and by conferring that power on the police board created by the statute.”
And in State ex rel. Denis vs. Mayor, 43 An. 107, the court, again considering this statute, said :
“ But it was deemed best for the efficiency of the police service of the city that the police department should be put under control of a police board, and, accordingly, one was created by the Legislature.”
The meaning and import, as well as the reason and spirit of the *1482 statute, are thus clearly outlined in those decisions; and the opinion then entertained corresponds with the views now expressed with regard to the particular provisions of Secs. 6 and 16 of the act. If those two sections were found to authorize and require the executive approval and sanction of the mayor, as a condition precedent to the enforcement of any and every order and regulation of the police board, in reference to the police government and the discipline of the officers and subordinates of the police force, the law would prove to be well nigh shorn of its efficacy, and its contemplated purpose and object defeated.
Our learned brother of the District Court, in an exceptionally cogent and well expressed opinion, announced similar reasons for his judgment in favor of the defendant, in which this court concurs.
Judgment affirmed.
Rehearing refused.